UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTON VUCINAJ,

               Plaintiff,        Civil Action No. 18-12867
                                        Honorable George Caram Steeh
v.                                           Magistrate Judge David R. Grand

COMMISSIONER OF
SOCIAL SECURITY,

               Defendant.
_____/

## REPORT AND RECOMMENDATION
## ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [19, 20]

Plaintiff Anton Vucinaj ("Vucinaj") brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions (Docs. #19, #20), which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

**I.**    **RECOMMENDATION**

For the reasons set forth below, the Court finds that substantial evidence supports the Administrative Law Judge's ("ALJ") conclusion that Vucinaj is not disabled under the Act. Accordingly, the Court **RECOMMENDS** that the

Commissioner's Motion for Summary Judgment (**Doc. #20**) be **GRANTED**, Vucinaj's Motion for Summary Judgment (**Doc. #19**) be **DENIED**, and that pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision be **AFFIRMED**.

## II.  REPORT

### A.  Background

Vucinaj was 39 years old at the time of his alleged onset date of July 7, 2011, and at 5'9" tall weighed approximately 260 pounds during the relevant time period. (Tr. 37, 277, 281). He completed high school but had no further education. (Tr. 37, 282). He has previous employment as a laborer and production worker, but he stopped working in July 2011 after injuring his back at work. (Tr. 43, 281-83, 318). He has since undergone two back surgeries, and he now alleges disability primarily as a result of continued back pain, as well as anxiety and depression. (Tr. 43, 281).

After Vucinaj's applications for DIB and SSI were denied at the initial level (Tr. 149-53, 166-70), he timely requested an administrative hearing, which was held on November 6, 2017, before ALJ Kari Deming (Tr. 30-54). Vucinaj, who was represented by attorney Adam Banton, testified at the hearing, as did vocational expert Beth Pasikowski. (*Id.*). On March 9, 2018, the ALJ issued a written decision finding that Vucinaj is not disabled under the Act. (Tr. 11-23). On July 31, 2018, the Appeals Council denied review. (Tr. 1-6). Vucinaj timely filed for judicial review of the final decision on September 14, 2018. (Doc. #1).

The Court has thoroughly reviewed the transcript in this matter, including Vucinaj's medical record, Function and Disability Reports, and testimony as to his conditions and resulting limitations. Instead of summarizing that information here, the Court will make references and provide citations to the transcript as necessary in its discussion of the parties' arguments.

**B.     The ALJ's Application of the Disability Framework Analysis**

Under the Act, DIB and SSI are available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is

3

> conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, No. 11-10593, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. § 404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps …. If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Following this five-step sequential analysis, the ALJ found that Vucinaj is not disabled under the Act. At Step One, the ALJ found that Vucinaj has not engaged in substantial gainful activity since July 7, 2011 (the alleged onset date). (Tr. 13). At Step Two, the ALJ found that he has the severe impairments of bilateral plantar fasciitis; degenerative disc disease, status post L3-5 fusion, hardware removal, scar excision, and decompression; post-laminectomy syndrome; obesity; and anxiety disorder due to general medical condition. (*Id.*). At Step Three, the ALJ found that Vucinaj's impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment. (Tr. 14).

4

The ALJ then assessed Vucinaj's residual functional capacity ("RFC"), concluding that he is capable of performing sedentary work, with the following additional limitations: can perform work that can generally be done while sitting or standing, and that affords the opportunity to alternate between sitting and standing 2-3 times per hour; may optionally use a handheld assistive device whenever ambulating; can occasionally stoop, but can never crouch, crawl, kneel, or climb stairs or ramps; can never be exposed to workplace hazards (such as ropes, ladders, scaffolds, unprotected heights, moving mechanical parts, or hazardous machinery); and can perform simple, routine tasks. (Tr. 16).

At Step Four, the ALJ found that Vucinaj is not capable of performing any of his past relevant work. (Tr. 22). At Step Five, the ALJ determined, based in part on testimony provided by the vocational expert in response to hypothetical questions, that Vucinaj is capable of performing the jobs of sorter (74,000 jobs nationally), assembler (84,000 jobs), and inspector (59,000 jobs). (Tr. 23). As a result, the ALJ concluded that Vucinaj is not disabled under the Act. (*Id.*).

**C.    Standard of Review**

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal

5

standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *See Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the

6

Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted).

**D. Analysis**

*1. The ALJ's RFC Finding is Supported by Substantial Evidence*

As set forth above, the ALJ found that Vucinaj retains the RFC to perform a reduced range of sedentary work that, in relevant part, permits the opportunity to alternate between sitting and standing two to three times per hour; permits the use of a handheld assistive device whenever ambulating; and is limited to simple, routine tasks. (Tr. 16). In so finding, the ALJ thoroughly and evenly discussed the medical evidence of record,[1] first noting that Vucinaj apparently suffered a work-related back injury in 2011. (Tr. 18). As the ALJ further noted, a January 2012 treatment note references a July 2011 MRI, which apparently showed disc bulges at L1-2 and L4-5. (*Id.* (citing Tr. 378)). At that time, Vucinaj reported that he had undergone physical therapy and injections with minimal relief, and back surgery was recommended. (*Id.*).

---

[1] Vucinaj points to a few specific records that the ALJ did not discuss in her decision. (Doc. #19 at 22). However, the law is clear that an ALJ is not required to specifically discuss each and every piece of evidence in the record, *see Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x at 508, and here, for the reasons discussed below, the ALJ provided a sufficiently detailed and thorough discussion of the history of Vucinaj's impairments and treatment to show that she considered the entire record.

7

As the ALJ further noted, however, Vucinaj did not follow up with an orthopedic specialist until September 14, 2012. (*Id.* (citing Tr. 382-83)). At that time, an updated MRI revealed only a degenerated disc bulge at L4-5 and a shallow bulge at L3-4. (Tr. 386). It was noted that, "having failed nonoperative treatment methods[,]" Vucinaj was planning to meet with Dr. Rahul Vaidya regarding surgery. (Tr. 387).

On April 25, 2013, Dr. Vaidya performed L3-5 decompression and fusion surgery. (Tr. 395-400). As the ALJ noted, Vucinaj tolerated the procedure well and was discharged home in stable condition, with normal range of motion, strength, and motor functioning. (Tr. 18-19 (citing Tr. 396)). Over the course of several months post-operatively, however, Vucinaj continued to complain of severe pain, despite the fact that he regularly presented in no acute distress, and repeated x-rays were normal. (Tr. 19, 413-15, 419, 421, 424, 426, 429, 431, 433, 435, 437). Similarly, a CT of Vucinaj's lumbar spine performed on March 28, 2014 showed an "[u]ncomplicated appearance of the L3 through L5 posterior fusion hardware without significant bony fusion noted." (Tr. 439). At a follow-up visit on July 8, 2014, Dr. Vaidya noted that Vucinaj was "doing better and better every day"; was "walking 40 minutes a day"; and was ready to be weaned off narcotic pain

medication.[2] (Tr. 443). In December 2014, however, Dr. Vaidya noted that Vucinaj "always complains of a lot of pain when he comes to see us"; therefore, he ordered another lumbar CT, which again showed stable post-surgical changes and no evidence of hardware complications. (Tr. 450, 452-53).

In April 2015, Vucinaj underwent an elective hardware removal, scar excision, and decompression surgery. (Tr. 456-57). Post-operatively, Vucinaj did well, and Dr. Vaidya noted that he "seem[ed] to be much more comfortable than he was preop." (Tr. 484). In July 2015, Vucinaj reported being pleased with the surgery's outcome. (Tr. 490). As the months passed, however, and efforts were made to decrease Vucinaj's pain medication, he continued to complain of significant pain and request medication increases. (Tr. 486, 490, 494, 500, 505). Again, repeated x-rays showed normal alignment of the lumbar spine. (Tr. 488, 507).

On January 5, 2016, Vucinaj saw Clifford Houseman, D.O. at Michigan Spine and Brain Surgeons. (Tr. 337-41). On examination, Vucinaj had slightly reduced lumbar strength, though (as the ALJ recognized in her decision) that result was noted to be "secondary to poor effort." (Tr. 338). Dr. Houseman ordered an MRI of the lumbar spine, which showed no evidence of disc herniation or central canal stenosis at the levels of instrumentation; facet arthritis at L4-5 with mild narrowing of the

---

[2] Six months later, however, Dr. Vaidya noted that he had "not been able to get [Vucinaj] off his narcotic medication," although he was continuing to "walk and exercise as best he can." (Tr. 454).

right neural foramen; and mild disc bulging at L2-3. (Tr. 334). Ultimately, no further surgery was recommended, and Vucinaj was referred to the pain clinic for medication management. (Tr. 806, 826, 831).

In formulating Vucinaj's RFC, the ALJ considered this medical evidence, as well as the medical opinions of record. Specifically, the ALJ gave partial weight to the opinion of state agency reviewing physician Twaide Langham, D.O., who reviewed the record evidence and opined that Vucinaj could perform a reduced range of *light* work (i.e., far *less limited* than the sedentary RFC the ALJ ultimately found). (Tr. 19, 21, 135-41). Additionally, the ALJ considered opinions provided by two of Vucinaj's treating physicians – his orthopedic surgeon, Dr. Vaidya, and his primary care physician, Dr. Wietrzykowski. (Tr. 19, 21). As the ALJ noted, however, both of these physicians provided only "conclusory statements indicating that [Vucinaj] is either 'disabled from work' [(Tr. 877)] or 'completely disabled' [(Tr. 765, 766)]." (Tr. 19). The ALJ reasonably declined to give these opinions any weight, finding them at odds with the objective physical examinations of record (which revealed that Vucinaj "has good strength when he is not putting forth a 'poor effort'" and no sign of atrophy), as well as his reported daily activities.[3] (Tr. 21). Vucinaj does not

---

[3] The ALJ also properly noted that the physicians' opinions that Vucinaj was "disabled" go to the ultimate issue of disability, which is an administrative issue reserved to the Commissioner and, thus, is not entitled to any special significance. *See Cosma v. Comm'r of Soc. Sec.*, 652 F. App'x 310, 311 (6th Cir. 2016) ("The ALJ reasonably gave no weight to [the doctor's] opinion because

challenge the weight assigned to any of these medical opinions.

In his motion, Vucinaj raises several specific challenges to the ALJ's formulation of his RFC. (Doc. #19 at 28-31). First, Vucinaj argues that the ALJ improperly characterized the diagnostic testing in the record as "mild," claiming that she ignored a January 12, 2012 x-ray report showing "'**severe degenerative** changes at the L4-L5 facet on the left' with osteoarthritic changes noted in the sacroiliac joints." (*Id.* at 30 (quoting Tr. 563) (emphasis added by Vucinaj)). There are several problems with this argument, however. First, the ALJ actually described the diagnostic testing not as mild, but as "mostly" mild. (Tr. 17). And, in making this observation, the ALJ referenced the words of Vucinaj's own attorney, who acknowledged in his pre-hearing brief that, "'It is worth noting that the claimant's diagnostic testing has consistently indicated mostly mild findings.'" (Tr. 17 (quoting Tr. 329)).[4] Moreover, while the diagnostic testing may have yielded mostly mild findings, it is undisputed that the ALJ found Vucinaj's back impairment to be "severe," resulting in the imposition of an extremely limited RFC. (Tr. 13, 16). Second, the January 2012 lumbar spine x-ray report cited by Vucinaj was reviewed

---

her conclusion that [the plaintiff] is totally disabled is a determination reserved to the Commissioner.").

[4] The ALJ made clear that her analysis was not a "gotcha" moment; rather, she acknowledged counsel's candor in recognizing the mostly mild findings reflected in the record, and evenly considered his counter-argument to those records, *i.e.*, that Vucinaj's consistent complaints of pain led to his surgeries. (Tr. 17-19).

11

by Dr. Langham (Tr. 136, 140), who nevertheless concluded that Vucinaj could perform a range of *light* work, as previously discussed. And, third, the same report relied on by Vucinaj concluded that he had only *mild* degenerative changes *overall*, notwithstanding the observed "severe" change at L4-5 specifically. (Tr. 563). Thus, Vucinaj's objection to the ALJ's characterization of the objective imaging results as "mostly mild" is not persuasive.

Vucinaj also argues that the ALJ inadequately discussed his daily activities in formulating his RFC. (Doc. #19 at 29). But, he does not cite any case law in support of the proposition that a claimant's daily activities must be discussed at all – let alone in any particular level of detail – and, indeed, courts have held otherwise. *See, e.g., Prince v. Comm'r of Soc. Sec.*, No. 13-12055, 2014 WL 4639506, at *22-23 (E.D. Mich. Sept. 16, 2014) (collecting cases). Moreover, Vucinaj's factual assertion itself is incorrect, as the ALJ specifically referenced his testimony that he "does little else other than lie down and watch television" all day; that he takes three or four naps per day; and that his fiancée performs all household chores, including caring for their minor child. (Tr. 17). The ALJ reasonably found, however, that Vucinaj's testimony to this effect was inconsistent with records from his primary care physician, Dr. Wietrzykowski, which indicate Vucinaj had a "[n]ormal activity level" and "[n]o malaise." (Tr. 19, 22, 788, 793, 803, 807, 812, 816, 821, 827, 832, 838, 844). The ALJ also noted that records reflected "good strength with no indication of muscle

12

wasting/atrophy," which is consistent with a normal activity level. (Tr. 19, 378, 389, 391-92, 396, 471, 494, 789, 808, 877).[5]

In light of the ALJ's thorough analysis, as set forth above, there is no merit to Vucinaj's remaining arguments either. For example, his claim that "there is no 'accurate and logical bridge' as to determine the method by which the RFC was formulated" (Doc. #19 at 30) is belied by the evidence discussed above. *See Weaver v. Comm'r of Soc. Sec.*, No. 16-10942, 2017 WL 1212995, at *12 (E.D. Mich. Jan. 20, 2017) (rejecting plaintiff's "logical bridge" argument because "the ALJ's analysis parses the record material in a way that is neither cursory or irrelevant"). Likewise, the Court is not persuaded by Vucinaj's perfunctory assertion that the ALJ's RFC assessment fails to comply with the "narrative discussion" requirements of Social Security Ruling ("SSR") 96-8p, which provides, in relevant part:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record.

*Soc. Sec. Rul. 96-8p*, 1996 WL 374184, at *7 (July 2, 1996) (footnote omitted). The

---

[5] The ALJ recognized that some records reflect reduced strength. (Tr. 19). However, as mentioned above, the ALJ appropriately noted that in many of those instances, the records indicate that such results were the product of "poor effort" by Vucinaj. (*Id.*).

Sixth Circuit has held that an ALJ complies with this Ruling by "assessing each of [the] work-related limitations that were at issue." *Winslow v. Comm'r of Soc. Sec.*, 566 F. App'x 418, 421 (6th Cir. 2014). Here, where the ALJ did just that, and where Vucinaj has not articulated how the ALJ's RFC finding fails to comply with SSR 96-8p, this argument is without merit. For all of these reasons, the RFC finding is supported by substantial evidence.[6]

### 2. The ALJ Properly Evaluated Vucinaj's Subjective Complaints

In her decision, the ALJ found that Vucinaj's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Tr. 21). In his motion, Vucinaj cites to SSR 96-7p,[7] 1996 WL 374186 (July 2, 1996), arguing that, in evaluating his subjective

---

[6] Vucinaj also cites *Sims v. Apfel*, 530 U.S. 103, 111 (2000), for the proposition that because the "administrative process is inquisitorial, not adversarial[,]" the ALJ had a "duty to investigate the facts and develop the arguments both for and against granting benefits." (Doc. #19 at 33). Vucinaj does not develop this argument in any detail whatsoever, failing entirely to point to additional "facts" or "arguments" the ALJ should have developed or articulated. As such, this argument is waived. *See, e.g., McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to … put flesh on its bones.") (internal quotations omitted).

[7] SSR 96-7p has been superseded by SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017). In contrast to the superseded ruling, SSR 16-3p eliminates the use of the term "credibility" from SSA policy, making clear that "subjective symptom evaluation is not an examination of an individual's character." *Soc. Sec. Rul. 16-3p*, 2017 WL 5180304, at *2. The new ruling, which applies to decisions or determinations made after March 28, 2016, does not change the two-step regulatory process for evaluating a claimant's subjective complaints or the regulatory factors for consideration of a claimant's symptoms.

complaints, the ALJ failed to mention "the effects of prescribed medications" and "misclassified" his 2015 surgery as "elective." (Doc. #19 at 31, 32-33). For the reasons set forth below, the Court finds no error in the ALJ's evaluation of Vucinaj's subjective complaints.

To begin with, the Sixth Circuit has held that ALJs are in the best position to evaluate a claimant's subjective complaints because "the ALJ's opportunity to observe the demeanor of the claimant 'is invaluable, and should not be discarded lightly.'" *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 538 (6th Cir. 1981) (quoting *Beavers v. Sec'y of Health, Ed. & Welfare*, 577 F.2d 383, 387 (6th Cir. 1978)). Thus, such an evaluation will not be disturbed "absent compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). The ALJ is not simply required to accept the testimony of a claimant if it conflicts with medical reports and other evidence in the record. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). Rather, after the ALJ finds a medical condition that could reasonably be expected to produce the claimant's alleged symptoms, she must evaluate the claimant's symptoms by considering "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Soc. Sec. Rul. 16-3p*, 2017 WL 5180304, at *4 (Oct. 25, 2017). In making

15

such an adjudication, a "single, conclusory statement" asserting consideration of the individual's symptoms or reciting the factors in the regulations is insufficient. *Id.* at *10. Instead, "[t]he determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id.*

In her decision, the ALJ properly set forth the two-part regulatory standard for evaluating a claimant's subjective complaints. (Tr. 16-17). And, in considering Vucinaj's subjective allegations, the ALJ discussed the medical evidence of record (as set forth above); observed that the medical imaging on file revealed mostly mild findings (Tr. 17, 18); noted that, at many examinations, Vucinaj had normal gait and full or nearly full strength (Tr. 18-20, 378, 389, 391-92, 396, 471, 494, 789, 808, 877); and cited Vucinaj's testimony that he can drive a car (Tr. 20, 37). The ALJ also found that Vucinaj's claims that he did "little else other than lie down and watch television" (Tr. 17, 49-50) and that his fiancée did everything for him (Tr. 22, 292), were at odds with his repeated reports to Dr. Wietrzykowski that he had a normal activity level, as well as medical findings of no muscle atrophy (Tr. 19, 20, 22, 788, 793, 803, 807, 812, 816, 821, 827, 832, 838, 844). These inconsistencies were proper considerations for the ALJ. *See* 20 C.F.R. § 404.1529(c)(2)-(3).

In challenging the ALJ's evaluation of his subjective complaints, Vucinaj also

argues that the ALJ erred in failing to mention the side effects of prescribed narcotic medications. (Doc. #19 at 31). SSR 16-3p provides that, in evaluating the intensity, persistence, and limiting effects of an individual's symptoms, one of the factors to be considered is the "type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms[.]" *Soc. Sec. Rul. 16-3p*, 2017 WL 5180304, at *7-8. Here, the ALJ explicitly noted Vucinaj's testimony that his medications made him drowsy and, that as a result, he took several naps per day. (Tr. 17, 46).[8] But, the ALJ reasonably found that this testimony was inconsistent with Vucinaj's reports to Dr. Wietrzykowski that he had a "normal activity" level. (Tr. 20, 788, 793, 803, 807, 812, 816, 821, 827, 832, 838, 844). It was appropriate for the ALJ to discount Vucinaj's subjective complaints on the basis of this inconsistency. *See Stewart v. Comm'r of Soc. Sec.*, No. 17-11528, 2019 WL 1503127, at *9 (E.D. Mich. Feb. 1, 2019) (discounting claimant's allegations of medication side effects where medical records reflected no such complaints).[9]

In sum, in assessing Vucinaj's credibility and the effects of his impairments,

---

[8] Thus, Vucinaj's assertion that the ALJ failed to discuss the side effects of his medications is inaccurate. (Doc. #19 at 23).

[9] Vucinaj also argues that the ALJ improperly discounted his subjective complaints because of an erroneous belief that his 2015 surgery was "elective." (Doc. #19 at 32). But, it was Vucinaj's orthopedic surgeon, Dr. Vaidya, who expressly characterized that surgery as "elective." (Tr. 456). Moreover, the ALJ thoroughly discussed the medical procedures and treatment Vucinaj underwent prior to the 2015 surgery, as well as the records that document Vucinaj's decision to undergo the 2015 surgery, and how he did thereafter. (Tr. 18-19). Thus, any issue with the characterization of that surgery as "elective" is harmless.

the ALJ fairly and properly considered the record evidence, including Vucinaj's medical records, statements, and activities of daily living. The Court finds no reason to disturb the ALJ's evaluation of Vucinaj's subjective complaints because she observed Vucinaj firsthand, and her assessment is supported by substantial evidence in the record. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003) ("[A]n ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability.").

In short, as the ALJ found, "[Mr. Vucinaj] clearly has severe impairments" that cause him a certain degree of pain and limit the type of work he can perform. (Tr. 20). However, this Court's role is limited to reviewing the record to determine whether substantial evidence supports the ALJ's decision; if it does, the Court must affirm the ALJ's decision even if substantial evidence exists in the record from which one could reach a different conclusion. *See Cutlip*, 25 F.3d at 286. For all of the above reasons, and upon an independent review of the entire record, the Court concludes that the ALJ's decision is supported by substantial evidence. Accordingly, that decision should be affirmed.

### III. CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment (**Doc. #20**) be **GRANTED**,

Vucinaj's Motion for Summary Judgment (**Doc. #19**) be **DENIED**, and the ALJ's decision be **AFFIRMED**.

Dated: May 2, 2019  s/David R. Grand
Ann Arbor, Michigan  DAVID R. GRAND
United States Magistrate Judge

### NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation and Order, any party may serve and file specific written objections to the proposed findings and recommendations and the order set forth above. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. § 636(b)(1). Any such

response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on May 2, 2019.

                                          s/Eddrey O. Butts
                                          EDDREY O. BUTTS
                                          Case Manager